# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

24-1294

---

## UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

## DONTAVIUS RASHAUN SHARKEY, ALSO KNOWN AS DONTAVIUS RASHAWN SHARKEY, ALSO KNOWN AS DONTAVIUS RASHOWN SHARKEY,

Defendant-Appellant.

---

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE*
*SOUTHERN DISTRICT OF IOWA*
*HONORABLE JUDGE STEPHANIE M. ROSE, CHIEF U.S. DISTRICT COURT JUDGE*

---

## APPELLANT'S BRIEF

---

**Jonathan M. Causey**
*CAUSEY & YE LAW, PLLC*
2213 Grand Avenue
Des Moines, IA 50312
PHONE: (515) 381-0168
FAX: (515) 214-1434

ATTORNEY FOR APPELLANT

---

i

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

This is a direct appeal by Defendant Dontavius R. Sharkey ("Sharkey"). On October 5, 2023, a jury convicted Sharkey of Count 2-Straw Purchasing Conspiracy; Count 3-Felon in Possession of a Firearm; Count 5- Straw Purchasing Conspiracy; Count 6-Felon in Possession of a Firearm; Count 7-Illegal Possession of a Machinegun; and Count 8-Possession of a Firearm with Obliterated Serial Number. He was acquitted of Count 1-Felon in Possession of a Firearm and Count 4-Straw Purchasing Conspiracy.

The Final PSR had a guideline imprisonment range of 262 to 327 months. (PSR, p. 23, ¶ 116). The district court sentenced Sharkey to 360 months. (R. Doc. 154, at p. 1). Sharkey argues that the district court committed reversible error by denying his motion to dismiss the Counts 1-6 of the superseding indictment because § 922(g)(1) is unconstitutional and that the straw purchasing conspiracies should have also been dismissed because they were predicated on Sharkey being an unlawful possessor of a firearm. He additionally argues that the district court violated his constitutional rights in considering acquitted conduct in sentencing him. He further argues that the 360-month sentence of imprisonment was both procedurally and substantively unreasonable. Sharkey requests 15 minutes for oral argument.

ii

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT .......... ii

TABLE OF AUTHORITIES ....................................................................v

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE ............................................................4

SUMMARY OF THE ARGUMENT ....................................................13

ARGUMENT ....................................................................................14

    I.    The District Court erred in Denying Sharkey's Motion to Dismiss the Superseding Indictment.......................................................................14

        a. *Bruen*, and the Government's failure to rebut with a historically analogous regulation, mandated dismissal of the superseding indictment.......................................................................14

           i. The Government's use of dicta was not a sufficient rebuttal.......................................................................14

          ii. There are no historical analogues to § 922(g)(1)................17

        b. *Jackson* and the rest of 8th Circuit case law post-*Bruen* should not use dicta to uphold § 922(g)(1)....................................................21

        c. Historically, conduct was regulated, not the possessor of the firearm.......................................................................24

        d. Sharkey's specific conduct in the instant case was protected by the Second Amendment.......................................................................27

    II.   The District Court violated Sharkey's Constitutional Rights when it relied on Acquitted Conduct to Dramatically Increase his Sentence.......................................................................28

    III.  The District Court's 360-Month Sentence was Procedurally and Substantively Unreasonable.......................................................................34

CONCLUSION.......................................................................39

Appellate Case: 24-1294    Page: 3    Date Filed: 05/08/2024 Entry ID: 5391815

CERTIFICATE OF FILING AND SERVICE.......................................................41

Fed. R. App. P. 32(a)(7) AND 8th CIR. RULE 28A(c) CERTIFICATION ..........42

iv

# TABLE OF AUTHORITIES

**Cases:**

*Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)......................................................................................................... 28

*District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)...............7, 9, 14-16, 19, 21

*Gall v. U.S.*, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007).............. 34

*Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)......................................................................................................... 15

*Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)..................................................................................................... 28-29

*Jones v. United States*, 574 U.S. 948, 135 S.Ct. 8, 190 L.Ed.2d 279 (2014) (Scalia, J., joined by Thomas & Ginsberg, JJ., dissenting from denial of certiorari)............................................................................................... 29

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) (Barrett, J., dissenting), *abrogated by Bruen*, 142 S. Ct. 2111........................................................................... 15, 19

*McClinton v. United States*, 143 S. Ct. 2400, 216 L.Ed.2d 1258 (2023)...............................................................................................11, 28, 29, 30

*McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010)............... 26

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 213 L. Ed. 2d 387, 142 S. Ct. 2111 (2022).....................................................................4-9, 14-16, 18, 22, 24-26

*Range v. Att'y Gen.*, 53 F.4th 262, 269 (3d Cir. 2022) (per curiam) *vacated*........................................................................................................ 22

*Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023)..........17, 18, 22

v

*Southern Union Co. v. United States*, 567 U.S. 343, 132 S.Ct. 2344, 183 L.Ed.2d 318 (2012).................................................................................................. 28

*State v. Cote*, 129 N.H. 358, 530 A.2d 775 (1987)........................................... 30

*State v. Hogan*, 63 Ohio St. 202, 58 N.E. 572 (1900)...................................... 20

*State v. Kerner*, 181 N.C. 574, 107 S.E. 222 (1921)........................................ 20

*United States v. Adamson*, 608 F.3d 1049 (8th Cir.2010)................................. 37

*United States v. Anderson*, No. 23-CR-598, 2024 WL 1521449 (N.D. Ill. Apr. 8, 2024)................................................................................................................... 16-17

*United States v. Bell*, 808 F.3d 926 (D.C. Cir. 2015) (Millett, J., concurring in denial of rehearing en banc).......................................................................................... 29

*United States v. Bullock*, 679 F. Supp. 3d 501 (S.D. Miss. 2023).................... 16

*United States v. Burnette*, 518 F.3d 942 (8th Cir. 2008).................................. 34

*United States v. Carvajal*, 85 F.4th 602 (1st Cir. 2023).................................. 29

*United States v. Cochrane*, 608 F.3d 382 (8th Cir. 2010)................................ 35

*United States v. Cunningham*, 70 F.4th 502 (8th Cir. 2023)........................... 8, 23

*United States v. Dunn*, 76 F.4th 1062 (8th Cir. 2023)...................................... 8-9

*United States v. Frausto*, 636 F.3d 992 (8th Cir. 2011)................................... 37

*United States v. Haack*, 403 F.3d 997 (8th Cir.2005)...................................... 35

*United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023)................................... 8, 9, 21-23

*United States v. Jones*, 70 F.4th 1109 (8th Cir.), *cert. denied*, 144 S. Ct. 366, 217 L. Ed. 2d 196 (2023)............................................................................................... 14

Appellate Case: 24-1294    Page: 6    Date Filed: 05/08/2024 Entry ID: 5391815

*United States v. Kane*, 552 F.3d 748 (8th Cir. 2009).........................................35

*United States v. Leblanc*, No. CR 23-00045-BAJ-RLB, 2023 WL 8756694 (M.D. La. Dec. 19, 2023)...................................................................................................17

*United States v. Magee*, 834 F.3d 30 (1st Cir. 2016) (Torruella, J., concurring).........................................................................................................29

*United States v. Mitchell*, 825 F.3d 422 (8th Cir. 2016)...................................35

*United States v. Nickerson*, 322 Fed. Appx. 472 (8th Cir. 2009).....................34

*United States v. Prince*, No. 22 CR 240, 2023 WL 7220127 (N.D. Ill. Nov. 2, 2023)..............................................................................................................15, 16

*United State v. Quiroz*, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022)..........20

*United States v. Taylor*, No. 23-CR-40001-SMY, 2024 WL 245557 (S.D. Ill. Jan. 22, 2024).......................................................................................................17

*United States v. Wade*, 435 F.3d 829 (8th Cir. 2006)......................................28

*United States v. Watts*, 519 U.S. 148, 117 S. Ct. 633, 638, 136 L. Ed. 2d 554 (1997).............................................................................................................33

*U.S. v. Anderson*, 618 F.3d 873 (8th Cir. 2010)...............................................34

**Other:**

1795 Mass. Acts and Laws...................................................................................24

18 U.S.C. § 3553(a)........................................................................................38-39

18 U.S.C. § 922(g)(1)..........................................7, 8, 10, 13, 16, 17, 19, 21-23

1801 Tenn. Acts...................................................................................................24

vii

Act of Apr. 20, 1745, ch. 3, N.C. Laws.................................................18

Act of Dec. 21, 1771, ch. 540, N.J. Laws........................................ 18

Act of Oct. 3, 1961, Pub. L. No. 87-342, 75 Stat. 757 (repealed)....................28

Adam Winkler, *Heller's Catch-22*, 56 UCLA L. Rev. 1551 (2009)................19, 20

Collection of All Such Acts of the General Assembly of Virginia (1794)............................................................................... 24

*COMMISSION VOTES UNANIMOUSLY TO PASS PACKAGE OF REFORMS INCLUDING LIMIT ON USE OF ACQUITTED CONDUCT IN SENTENCING GUIDELINES,* https://www.ussc.gov/about/news/press-releases/april-17-2024 (last visited 5/6/2024)................................................................30

Eang Ngov, *Judicial Nullification of Juries: Use of Acquitted Conduct at Sentencing*, 76 Tenn. L. Rev. 235 (2009)........................................................ 29

Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), 52 Stat. 1250 (repealed)............................................................................20

Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213 (codified at 18 U.S.C. §§ 921-928)............................................................................ 20

Lawrence Rosenthal, *The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control*, 92 Wash. U. L. Rev. 1187 (2015)............................................................................ 20

Mark Motivans, *Federal Justice Statistics, 2021*, at 12 tbl.7 (Dec. 2022), https://bjs.ojp.gov/sites/g/files/xyckuh236/files/media/document/fjs21.pdf.....30

Nelson Lund, *The Second Amendment, Heller, and Originalist Jurisprudence*, 56 UCLA L. Rev. 1343 (2009)............................................................ 20

Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 L. & Hist. Rev.

Appellate Case: 24-1294    Page: 8    Date Filed: 05/08/2024 Entry ID: 5391815

139 (2007)........................................................................................ 20

Sean Rosenmerkel et al., *Felony Sentences in State Courts, 2006 – Statistical Tables* 3 tbl.1.1 (revised Nov. 2010), https://bjs.ojp.gov/content/pub/pdf/fssc06st.pdf............................................... 22

S. Exec. Doc. No. 43, 39th Cong., 1st Sess., 8 (1866)..................................... 26

Shannon, Uggen, Schnittker, Thompson, Wakefield, and Massoglia, *The Growth, Scope, and Spatial Distribution of People With Felony Records in the United States, 1948–2010*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5996985........... 27

U.S. Const. amend. I................................................................................. 15

U.S. Const. amend. II................................................................................ 14

U.S. Const. amend. IV.............................................................................. 15

U.S. Const. amend V...............................................................11, 13, 29, 32, 39

U.S. Const. amend. VI............................................................ 11, 13, 29, 32, 39

USSG § 2A2.1........................................................................................ 10

USSG § 2K2.1(b)(6)(B)........................................................4, 35-36, 38

USSG § 2K2.1(c)(1)...........................................................................10, 32

USSG § 3B1.1(c)................................................................................4, 36-38

ix

Appellate Case: 24-1294     Page: 9     Date Filed: 05/08/2024 Entry ID: 5391815

# JURISDICTIONAL STATEMENT

<u>The decisions appealed</u>:  Sharkey appeals the district court's September 20, 2023, order denying his motion to dismiss the superseding indictment and the District Court's 360-month sentence imposed on February 7, 2024.

<u>Jurisdiction of the court below</u>:  The United States District Court for the Southern District of Iowa had jurisdiction over Sharkey's federal criminal case pursuant to 18 U.S.C. § 3231.

<u>Jurisdiction of this Court</u>:  This Court has jurisdiction of the appeal pursuant to 28 U.S.C. § 1291 – "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ".

Sharkey filed a timely notice of appeal on February 14, 2024, from the original judgment and commitment order, which was entered on February 7, 2024.  *See* Fed. R. App. P. 4(b)(1)(A)(i).

Appellate Case: 24-1294     Page: 10     Date Filed: 05/08/2024 Entry ID: 5391815

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I. **WHETHER THE DISTRICT COURT ERRED IN DENYING SHARKEY'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT.**

*District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 213 L. Ed. 2d 387, 142 S. Ct. 2111 (2022)

*Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023)

*United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023)

U.S. Const. amend. II

18 U.S.C. § 922(g)(1)

II. **WHETHER THE DISTRICT COURT VIOLATED SHARKEY'S CONSTITUIONAL RIGHTS BY RELYING ON ACQUITTED CONDUCT TO DRAMATICALLY INCREASE SHARKEY'S SENTENCE.**

*McClinton v. United States*, 143 S. Ct. 2400, 216 L.Ed.2d 1258 (2023)

U.S. Const. amend. V

U.S. Const. amend. VI

III. **WHETHER THE DISTRICT COURT'S SENTENCE OF 360 MONTHS OF IMPRISONMENT WAS PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE.**

*United States v. Burnette*, 518 F.3d 942 (8th Cir. 2008)

*Gall v. U.S.*, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007)

2

*U.S. v. Anderson*, 618 F.3d 873, 883 (8th Cir. 2010)

USSG § 2A2.1

USSG § 2K2.1(b)(6)(B)

USSG § 2K2.1(c)(1)

USSG § 3B1.1(c)

18 U.S.C. § 3553(a)

## STATEMENT OF THE CASE

**Nature of the Case:**  Sharkey appeals the district court's denial of his motion to dismiss Counts 1-6 of the Superseding Indictment. (R. Doc. 86).[1]  Counts 1, 3, and 6 were facially unconstitutional under the Second Amendment to the United States Constitution and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 213 L. Ed. 2d 387, 142 S. Ct. 2111 (2022).  Counts 1, 3, and 6 of the Superseding Indictment were alternatively unconstitutional as applied to Sharkey, for he was a non-violent felon. *Id.*  Counts 2, 4, and 5 of the Superseding Indictment were unconstitutional as applied to Sharkey because those straw purchasing counts were predicated on Sharkey being an unlawful possessor of a firearm. *Id.*  Further, Sharkey appeals the use of acquitted conduct to enhance his sentence and appeals the "in connection" (§2K2.1(b)(6)(B)) and "role adjustment" (§3B1.1(c)) enhancements applied to his sentence.  Finally, Sharkey appeals the district court's unreasonable 360-month sentence of imprisonment. (R. Doc. 154).

## I.  Pretrial

---

[1] Sharkey moved to dismiss Counts 1-6 and 8 of the superseding indictment, but the jury acquitted him of Counts 1 and 4, and he does not challenge the jury's verdict on appeal but continues to assert Counts 1 and 4 were unconstitutional as charged. Additionally, on appeal, counsel abandons the constitutional challenge to Count 8, obliterated serial number under § 922(k). Further, Sharkey never claimed that Count 7, possession of a machine gun, was constitutionally protected.

4

### a. Original Indictment

On November 15, 2022, Sharkey was indicted in the Southern District of Iowa for Count 1 (Felon in Possession of a Firearm) in violation of 18 U.S.C. § 922(g)(1), Count 2 (Illegal Possession of a Machinegun) in violation of 18 U.S.C. § 922(o), and Count 3 (Possession of a Firearm with Obliterated Serial Number) in violation of 18 U.S.C. § 922(k). (R. Doc. 2).

### b. Motion to Dismiss Original Indictment

On April 25, 2023, Sharkey moved the district court to dismiss Counts 1 and 3 of the original indictment as facially unconstitutional under the Second Amendment to the United States Constitution and *Bruen*. (R. Doc. 40).[2] Further, Sharkey moved, in the alternative, for the district court to dismiss Count 1 as unconstitutional as applied to him because he was not previously deemed a violent or dangerous felon. *Id.*

### c. Superseding Indictment

Before the district court could rule on Sharkey's motion to dismiss the original indictment, the Government superseded on June 13, 2023 for Count 1 (Felon in Possession of a Firearm and ammunition) in violation of 18 U.S.C. §§ 922(g)(1) and

---

[2] Sharkey did not claim a 2nd Amendment right to possess a machine gun, which was Count 2.

5

924(a)(2); Count 2 (Straw Purchasing Conspiracy) in violation of 18 U.S.C. §§ 932(b)(1) and 932(c)(1); Count 3 (Felon in Possession of a Firearm and ammunition) in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); Count 4 (Straw Purchasing Conspiracy) in violation of 18 U.S.C. §§ 932(b)(1) and 932(c)(1); Count 5 (Straw Purchasing Conspiracy) in violation of 18 U.S.C. §§ 932(b)(1) and 932(c)(1); Count 6 (Felon in Possession of a Firearm and ammunition) in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); Count 7 (Illegal Possession of a Machinegun) in violation of 18 U.S.C. §§ 922(o) and 924(a)(2); and Count 8 (Possession of a Firearm with Obliterated Serial Number) in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). (R. Doc. 53). Counts 6 and 8 of the superseding indictment were the same as pled as Counts 1 and 3 of the original indictment. *Id.* The remaining Counts were new.

### d. Motion to Dismiss Superseding Indictment

On August 29, 2023, Sharkey moved to dismiss Counts 1, 2, 3, 4, 5, 6, and 8 of the superseding indictment. (R. Doc. 68).[3] As before, he argued that Counts 1, 3, and 6 of the superseding indictment were facially unconstitutional under the Second Amendment to the United States Constitution and *Bruen*. *Id.* He also moved, in the alternative, to dismiss Counts 1, 3, and 6 of the superseding indictment as

---

[3] Again, Sharkey did not claim a 2nd Amendment right to possess a machine gun, which was Count 7, and counsel has abandoned a constitutional claim re Count 8.

6

unconstitutional as applied to him. *Id.* He asked the district court to dismiss Count 8, the obliterated serial number, as unconstitutional. *Id.*[4] He further moved to dismiss Counts 2, 4, and 5 because, if § 922(g)(1) is unconstitutional on its face or as applied, it could not be used to support the straw purchasing conspiracy charges. *Id.*

### e. Government's Resistances to Motions to Dismiss and Sharkey's Reply

The Government resisted both Sharkey's motion to dismiss the original indictment and his motion to dismiss the superseding indictment. (R. Doc. 43 and 64, respectively). In resisting Sharkey's motion to dismiss Count 1 of the original indictment as facially unconstitutional, the Government relied on *Heller*'s dicta that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." (R. Doc. 43, p. 2-3) (citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). The Government did not cite to any "longstanding" "distinctly similar historical regulation[s]," or even "a historical analogue," "addressing" possession of firearms by felons. *See*

---

[4] Challenge to the constitutionality of § 922(k) is hereby abandoned on appeal. *See Reese v. Delo*, 94 F.3d 1177 (8th Cir. 1996) (Appellate counsel does not have a duty to raise every nonfrivolous claim on appeal and has discretion to abandon losing issues on appeal.).

*Bruen*, 213 L. Ed. 2d 387, 142 S. Ct. 2111. In resisting Sharkey's as-applied challenge, the Government relied on instances of disarmament of non-virtuous citizens, even those who had non-violent felony convictions. (R. Doc. 43, p. 24-25). The Government further argued that Sharkey's prior felony conviction of involuntary manslaughter defined him as dangerous and not protected by the Second Amendment. (R. Doc. 43, p. 22-23).

Sharkey filed a reply brief regarding his original motion to dismiss that pointed out that the Government had failed to meet *Bruen*'s burden-shifting mandate and demonstrate that § 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation. (R. Doc. 44).

In resistance to Sharkey's motion to dismiss the superseding indictment, the Government rested on its original resistance. (R. Doc. 64, p. 2). It further noted that in between Sharkey's original motion to dismiss and his motion to dismiss the superseding indictment, the Eighth Circuit had decided *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) (also rejecting as-applied challenge and defendant's invitation to utilize a "felony-by-felony" approach); *United States v. Cunningham*, 70 F.4th 502 (8th Cir. 2023) (finding there is a longstanding prohibition on possession of firearms by felons and that its constitutional); and *United States v. Dunn*, 76 F.4th 1062 (8th Cir. 2023) (holding 922(g)(1) does not violate a felon's

Second Amendment rights). *Id.* The Government further argued that the straw purchasing conspiracies were not protected by the Second Amendment because they were conspiracies to defraud the U.S. and circumvent firearm purchasing laws. (R. Doc. 64, at p. 3-4).

### f. District Court Denied Motions to Dismiss.

The district court denied Sharkey's motion to dismiss the superseding indictment on September 20, 2023. (R. Doc. 86). The district court acknowledged *Bruen*'s shift to "a test rooted in the Second Amendment's text, as informed by history" which requires the Government to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." (R. Doc. 86, at p. 2) (quoting *Bruen*, 142 S. Ct. at 2127). Then, however, it relied on *Jackson*'s holding that § 922(g)(1) does not violate the Second Amendment based on the idea that *Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons." (R. Doc. 86, at p. 3) (citing *Jackson*, 69 F.4th at 501 (quoting *Heller*, 554 U.S. at 626)). *Jackson* was binding on the district court. (R. Doc. 86, at p. 3). So, it denied Sharkey's motion to dismiss Counts 1-6 of the superseding indictment. *Id.* In a footnote, the district court agreed with Sharkey that Counts 2, 4, and 5 (straw purchasing conspiracies) were "predicated on [Sharkey] being an unlawful possessor of a

9

firearm[,]" and because § 922(g)(1) was constitutional, the district court denied Sharkey's motion to dismiss Counts 2, 4, and 5. (R. Doc. 86, at p. 3, n. 2). The district court did not analyze Sharkey's motion to dismiss the straw purchasing counts under the arguments promoted by the Government, i.e. that they were regulatory in nature and not susceptible to Second Amendment challenge.

## II. <u>Trial and Post-Trial</u>

Sharkey proceeded to a four-day jury trial on October 2, 2023. On October 5, 2023, the jury returned guilty verdicts on Counts 2, 3, 5, 6, 7, and 8 of the superseding indictment. (R. Doc. 131). It acquitted Sharkey of Counts 1 and 4. *Id.*[5] On February 7, 2024, Sharkey appeared for sentencing.

The final PSR gave Sharkey a total offense level of 36. (PSR, p. 12-13). With a CHC of IV, Sharkey's guideline imprisonment range, according to the PSR, was from 262 to 327 months. (PSR, p. 23).

Arguing for an above guidelines sentence, the Government was unabashed in its request of the district court to sentence Sharkey as if it had won Count 1 and as if the cross-reference to attempted murder per USSG § 2K2.1(c)(1) and § 2A2.1 applied. (R. Doc. 152, at p. 15). The Government referred to the inapplicability of

---

[5] Sharkey does not appeal the jury's verdict.

10

the cross-reference in Sharkey's case as a "loophole in the guidelines." *Id.* The Government further requested enhancements for 8 to 24 firearms (§ 2K2.1(b)(1)(B)), Obliterated serial number (§ 2K2.1(b)(4)(B)), In connection (§ 2K2.1(b)(6)(B)), Role adjustment (§ 3B1.1(c)), and Reckless endangerment (§ 3C1.2). *Id.* The Government requested a sentence of 360 months.

In defense, Sharkey argued that "the use of acquitted conduct to increase a defendant's Guidelines range and sentence raises important questions that go to the fairness and perceived fairness of the criminal justice system." (R. Doc. 153, at p. 5) (quoting *McClinton v. United States*, 143 S. Ct. 2400, 2401, 216 L.Ed.2d 1258 (2023)). Importantly, the use of acquitted conduct at sentencing is inconsistent with the Sixth Amendment right to a jury trial, the Fifth Amendment due process Clause, and the protection against double jeopardy. (R. Doc. 153, at p. 5). Defining this as a loophole was inappropriate. Additionally, Sharkey argued that the enhancements for "in connection" (§ 2K2.1(b)(6)(B)), "role adjustment" (§ 3B1.1(c)), and "reckless endangerment" (§ 3C1.2)[6] should not apply. (R. Doc. 153, at p. 4-8). Finally, Sharkey argued that the sentence of 360 months requested by the Government was unreasonable and a dramatic increase from the guideline range

---

[6] Challenge to the Reckless Endangerment enhancement is abandoned on appeal.

based on acquitted conduct. (R. Doc. 153); (Sent. Tr. p. 29-30). Sharkey asked for a sentence of no more than the statutory max for any one count of conviction, i.e. 180 months. (R. Doc. 153); (Sent. Tr. p. 30).

The district court sided with the Government. It sentenced Sharkey to 360 months.

Appellate Case: 24-1294    Page: 21    Date Filed: 05/08/2024 Entry ID: 5391815

## SUMMARY OF THE ARGUMENT

Sharkey raises three issues on appeal. First, the district court should have dismissed Counts 1-6 of the superseding indictment because the Government failed to rebut his challenges that § 922(g)(1) is unconstitutional on its face and as applied to him, and the Government failed to rebut Sharkey's challenge that the straw purchasing conspiracies should be dismissed because they relied on Sharkey being an individual prohibited from possessing firearms. The undersigned is aware of Eighth Circuit precedent, namely *Jackson*, but the Supreme Court of the United States is currently considering cases that deal with challenges to § 922, and there are other circuits and district courts that have held differently under § 922. Considering the flux in Second Amendment jurisprudence, Sharkey challenges the constitutionality of his charges and convictions. Second, Sharkey argues that the district court violated his Sixth Amendment right to a jury trial, his Fifth Amendment due process right, and the protection against double jeopardy when it considered and gave great weight to acquitted conduct in dramatically increasing his sentence. Third, Sharkey challenges the "in connection" and "role adjustment" enhancements applied to him by the district court to determine his sentence as procedurally unreasonable. Sharkey further challenges the district court's 360-month sentence as substantively unreasonable.

13

# ARGUMENT

## I. The District Court erred in Denying Sharkey's Motion to Dismiss the Counts 1-6 of the Superseding Indictment.

**Standard of Review:** This court reviews *de novo* the district court's denial of a motion to dismiss. *United States v. Jones*, 70 F.4th 1109, 1111 (8th Cir.), *cert. denied*, 144 S. Ct. 366, 217 L. Ed. 2d 196 (2023).

### a. *Bruen,* and the Government's failure to rebut with a historically analogous regulation, mandated dismissal of Counts 1-6 of the superseding indictment.

#### i. The Government's use of dicta was not a sufficient rebuttal.

"[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The Second Amendment protects "the right of the people to keep and bear Arms ...." U.S. Const. amend. II. The plain text, "keep and bear arms," means possessing and carrying weapons. *Heller*, 554 U.S. at 583-92. Therefore, Sharkey's conduct was protected.

Sharkey is also part of "the people." In *Heller*, the Court explained that when the Constitution refers to " 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset," and that there is a "strong presumption that the Second Amendment right is exercised individually and

14

belongs to all Americans." 554 U.S. at 580-81. And felons are not "categorically excluded from our national [American] community." *Kanter v. Barr*, 919 F.3d 437, 453 (7th Cir. 2019) (Barrett, J., dissenting), *abrogated by Bruen*, 142 S. Ct. 2111.

Additionally, *Heller*'s emphasis on "law abiding citizens" was dicta, and interpreting "the people" to exclude felons is inconsistent with how courts have interpreted "the people" in other constitutional text. *United States v. Prince*, No. 22 CR 240, 2023 WL 7220127, at *4 (N.D. Ill. Nov. 2, 2023). "For example, individuals with felony convictions continue to enjoy Fourth Amendment protection and the ability to exercise their First Amendment rights, including during time serving their sentences, because they are part of 'the people.' " *Id.* (citing U.S. Const. Amends. I, IV). "Although felons experience reduced constitutional protection in certain settings, such as prison cells, they are not categorically, permanently excluded from the Constitution's purview." *Id.* (citing *e.g., Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). As such, Sharkey's individual "right" to "bear arms" is constitutionally protected by the Second Amendment.

Under the *Bruen* framework, once it is established that the Second Amendment's plain text covers an individual's conduct, the Government then "must demonstrate that the [challenged] regulation is consistent with this Nation's

15

historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2122. In the instant case, to meet its burden, the Government had to provide the district court with a "distinctly similar historical regulation addressing" "a general societal problem that has persisted since the 18th century," i.e. felons possessing firearms. *Id.* at 2131. Only then could the district court conclude that Sharkey's conduct fell outside of the Second Amendment's "unqualified command." *Id.* (citation omitted). That never happened.

At the district court, the Government simply repeated dicta that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." (R. Doc. 43, p. 2-3) (citing *Heller*, 554 U.S. at 626); *cf. United States v. Bullock*, 679 F. Supp. 3d 501, 535 (S.D. Miss. 2023) (Finding *Heller*'s statements about felon disarmament being "presumptively lawful" non-binding dicta, and the government's reliance thereon not enough to rebut a constitutional challenge to § 922(g)(1)); *Prince*, No. 22 CR 240, 2023 WL 7220127, at *5 (The court agrees with defendant that *Heller* and *Bruen* did not hold that the Second Amendment categorically protects only law-abiding citizens, despite their repeated use of such qualified language as "law abiding citizens."); *United States v. Anderson*, No. 23-CR-598, 2024 WL 1521449, at *6 (N.D. Ill. Apr. 8, 2024) ("[T]his court is not persuaded that the government has

Appellate Case: 24-1294    Page: 25    Date Filed: 05/08/2024 Entry ID: 5391815

met its burden to show a 'distinctly similar,' or even a 'relevantly similar,' historical analogue to § 922(g)(1)'s permanent prohibition on firearm possession by felons[.]") (citations omitted); *United States v. Taylor*, No. 23-CR-40001-SMY, 2024 WL 245557, at *5 (S.D. Ill. Jan. 22, 2024) (Because none of the historical laws offered by the Government impose a "comparable burden" on the Second Amendment right of convicted felons to keep and bear arms, the Court finds § 922(g)(1) unconstitutional, facially and as applied.); *United States v. Leblanc*, No. CR 23-00045-BAJ-RLB, 2023 WL 8756694, at *15 (M.D. La. Dec. 19, 2023) (As applied challenge succeeds because the Government has not marshaled the historical evidence required to carry its burden of justifying § 922(g)(1), as the Supreme Court now mandates.); *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 103 (3d Cir. 2023) (Holding that the Government failed in its burden to justify applying § 922(g)(1) to Range "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."). Once the Government failed to rebut Sharkey's facial challenge with a historical analogue, per *Bruen*, the district court should have dismissed Counts 1-6 of the superseding indictment. Its failure to do so constitutes reversible error.

      ii. There are no historical analogues to § 922(g)(1).

The reason the Government produced no historical analogues is because there

Appellate Case: 24-1294     Page: 26     Date Filed: 05/08/2024 Entry ID: 5391815

are none. Characterizing "consistent with this Nation's historical tradition of firearm regulation," *Bruen* stated that, "[f]or instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131. "And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality." *Id.*

Historically, a felon could actually " 'repurchase arms' after successfully completing his sentence and reintegrating into society." *Range*, 69 F.4th at 105 (citing Krause, J. dissenting at 127-28). In fact, "[f]ounding-era laws often prescribed the forfeiture of the weapon used to commit a firearms-related offense without affecting the perpetrator's right to keep and bear arms generally." *Id.* (citing e.g., Act of Dec. 21, 1771, ch. 540, N.J. Laws 343–344 ("An Act for the Preservation of Deer, and other Game, and to prevent trespassing with Guns"); Act of Apr. 20, 1745, ch. 3, N.C. Laws 69–70 ("An Act to prevent killing deer at unseasonable times, and for putting a stop to many abuses committed by white persons, under pretence [sic] of hunting")).

18

Further, based on various States' proposals during ratification of the Second Amendment, so too existed the presumed "societal concern" addressed by § 922(g)(1) – felons possessing firearms. Commentary immediately following ratification illustrates the view that certain restrictions from the English Restoration were inconsistent with the right that was ultimately codified in the Second Amendment. *Heller*, 554 U.S. at 606-08. And while the New Hampshire, Massachusetts, and Pennsylvania ratifying conventions included proposals to limit the right to "peaceable citizens," or to expressly permit disarmament for those in "rebellion" or for "crimes committed," this language was not included in the Second Amendment itself. *See Kanter*, 919 F.3d at 454-55 (Barrett, J., dissenting), *abrogated by Bruen*, 142 S. Ct. 2111. In other words, "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons[,]" even when encouraged by some state conventions to do so. *Id.* at 451, 454 (Barrett, J., dissenting) (noting scholars have not been able to identify any founding-era laws disarming all felons); *see also* Adam Winkler, *Heller's Catch-22*, 56 UCLA L. Rev. 1551, 1563 (2009) [Hereinafter Winkler].

Indeed, "[a]s one historian wrote, after he searched all existing printed session laws of the first fourteen states year by year from 1607 to 1815, he couldn't find 'a single instance in which these jurisdictions exercised a police power to prohibit gun

ownership by members of the body politic.' " *United State v. Quiroz*, 2022 WL 4352482, *6 (W.D. Tex. Sept. 19, 2022) (quoting Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 L. & Hist. Rev. 139, 142 (2007). "And even though other state courts eventually ruled on laws regulating the condition of a person, very few states prohibited felons—or any other type of person for that matter—from possessing a firearm." *Id.* at *7 (citing *e.g., State v. Kerner*, 181 N.C. 574, 107 S.E. 222 (1921) (upholding ban on carrying a deadly weapon while intoxicated); *State v. Hogan*, 63 Ohio St. 202, 58 N.E. 572, 575-76 (1900) (upholding a ban on carrying a firearm by "a tramp")).

For its part, Congress did not pass the first version of the modern federal firearm ban for violent felons until 1938, expanded it to include non-violent felons in 1961, and all felon possession in 1968, forever segregating felons out as a subset of "the people" not entitled to Second Amendment liberty. *See* Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), 52 Stat. 1250, 1251 (repealed); Act of Oct. 3, 1961, Pub. L. No. 87-342, 75 Stat. 757 (repealed); Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213 (codified at 18 U.S.C. §§ 921-928); *see also* Winkler at 1563 ("Bans on ex-felons possessing firearms were first adopted in the 1920s and 1930s, almost a century and a half after the Founding."); Nelson Lund, *The Second*

20

*Amendment, Heller, and Originalist Jurisprudence*, 56 UCLA L. Rev. 1343, 1357 (2009) (similar); Lawrence Rosenthal, *The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control*, 92 Wash. U. L. Rev. 1187, 1211 (2015) (similar).

### b. *Jackson* and the rest of 8th Circuit case law post-*Bruen* should not use dicta to uphold § 922(g)(1).

The district court relied on *Jackson*'s binding holding that § 922(g)(1) does not violate the Second Amendment based on the idea that *Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons." Jackson argued that § 922(g)(1) was unconstitutional as applied to him, because his drug offenses were "non-violent" and did not show that he was more dangerous than the typical law-abiding citizen. *Jackson*, 69 F.4th at 501. This Court found that *Bruen* "did not disturb" *Heller*'s dicta regarding "longstanding prohibitions on the possession of firearms by felons." *Id.* (quoting *Heller*, 554 U.S. at 626). "Given these assurances by the Supreme Court, and the history that supports them, we conclude that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Id.* at 502.

But, in a footnote, this Court cited to data that indicated that invalidating § 922(g)(1) for non-violent felons "would substantially invalidate the provision

enacted by Congress. The most recent available annual data show that only 18.2 percent of felony convictions in state courts and 3.7 percent of federal felony convictions were for 'violent offenses.' " *Id.*, n.2 (citing Sean Rosenmerkel et al., *Felony Sentences in State Courts, 2006 – Statistical Tables* 3 tbl.1.1 (revised Nov. 2010), https://bjs.ojp.gov/content/pub/pdf/fssc06st.pdf; Mark Motivans, *Federal Justice Statistics, 2021*, at 12 tbl.7 (Dec. 2022), https://bjs.ojp.gov/sites/g/files/xyckuh236/files/media/document/fjs21.pdf.). This reliance on data to justify the constitutional validity of § 922(g)(1) as applied to a non-violent felon replicates means-end scrutiny which was abrogated by *Bruen*. 142 S. Ct. at 2127.

*Jackson* additionally relied heavily on the Third Circuit's *Range* per curiam historical analysis of legislatures' history of disarming citizens who are not "law-abiding" – i.e., those who are "unwilling to obey the government and its laws, whether or not they had demonstrated a propensity for violence" – prior to that opinion being overturned *en banc*. *Jackson*, 69 F.4th at 502 (quoting *Range v. Att'y Gen.*, 53 F.4th 262, 269 (3d Cir. 2022) (per curiam) *vacated*); *cf. Range*, 69 F.4th at 106. Further, *Jackson*'s own historical analysis focused mainly on pre-Founding and pre-Ratification era restrictions on firearm possession, which never made their way into the Second Amendment text, or on other punishments, like forfeiture of an

22

estate or death for non-violent felons. *Jackson*, 69 F.4th at 502-04. But none of these historical laws are analogous to categorical disarmament of all felons forever. Finally, in justifying modern-era disarmament of all felons, *Jackson* returned to means-end scrutiny, i.e. Congress has a strong interest in disarming felons to keep streets safe. *Id.* 504-05.

This Court further held that the defendant's challenge in *Cunningham* was "foreclosed" by *Jackson* because there was "no need for felony-by-felony determinations regarding the constitutionality of § 922(g)(1) as applied to a particular defendant[]" since the "longstanding prohibition on possession of firearms by felons is constitutional[.]" *Cunningham*, 70 F.4th at 506 (citations omitted). *Cunningham* has now been docketed for review by the Supreme Court on the issue of § 922(g)(1)'s constitutionality.[7]

The issue with these Eighth Circuit cases and others is the continued reliance on dicta that there is a "longstanding" tradition of disarming some subsection of "the people" while allowing only "law-abiding citizens" to maintain their constitutionally protected Second Amendment rights. They, however, fail to cite historical

---

[7] The Government also cited to *United States v. Dunn*, 76 F.4th 1062 (8th Cir. 2023) (holding 922(g)(1) does not violate a felon's Second Amendment rights) at the district court, but this case was decided on procedural grounds as much as constitutional, for Dunn had forfeited his constitutional claim at the district court.

Appellate Case: 24-1294     Page: 32     Date Filed: 05/08/2024 Entry ID: 5391815

analogues to the Founding or Ratification where the government categorically disarmed any subsection of "the people," let alone disarmed all felons.

### c. Historically, conduct was regulated, not the possessor of the firearm.

Analyzing laws as far back as the Statute of Northampton, "one's *conduct* 'will come within the Act,'—i.e., would terrify the King's subjects—only 'where the crime shall appear to be malo animo,' 1 Comb., at 39, 90 Eng. Rep., at 330, with evil intent or malice." *Bruen*, 142 S. Ct. at 2141 (emphasis added). And "Serjeant William Hawkins, in his widely read 1716 treatise, … noted that 'Persons of Quality' were 'in no Danger of Offending against this Statute [of Northampton] by wearing common Weapons' because, in those circumstances, it would be clear that they had no 'Intention to commit any Act of Violence or Disturbance of the Peace.' " *Id.* at 2142 (internal citations omitted). The same was true in colonial times when an individual would need to go "armed Offensively … in Fear or Affray" of the people in order to violate the law. *Id.* at 2143 (analyzing Colonial Massachusetts and New Hampshire regulations on the public carrying of firearms); *see also* Collection of All Such Acts of the General Assembly of Virginia ch. 21, p. 33 (1794) (1786 Virginia statute required "in terror of the Country."); 1795 Mass. Acts and Laws ch. 2, p. 436, in Laws of the Commonwealth of Massachusetts (1795 Massachusetts statute

24

required going "armed offensively, to the fear or terror of the good citizens of this Commonwealth."); 1801 Tenn. Acts pp. 260–261 (1801 Tennessee statute required an individual to "publicly ride or go armed to the terror of the people[.]"). All of these laws, as the *Bruen* Court concluded, "prohibit[ed] bearing arms in a way that spreads 'fear' or 'terror' among the people." *Id.* at 2145. *Bruen* summarized how historical firearm restrictions prior to and around the Founding regulated *conduct*, not a subset of individuals.

> Those restrictions, for example, limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials. Apart from a few late-19th-century outlier jurisdictions, American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense. Nor, subject to a few late-in-time outliers, have American governments required law-abiding, responsible citizens to "demonstrate a special need for self-protection distinguishable from that of the general community" in order to carry arms in public. *Klenosky*, 75 App.Div., at 793, 428 N.Y.S.2d at 257.

*Id.* at 2156.

Sharkey would argue that the Court's terminology in *Bruen* – "ordinary, law-abiding citizens" – is, in fact, a prelude to the Court returning to the Founding-era historical tradition of regulating *conduct* and not the bearer. This regulation of contemporaneous conduct while possessing a firearm and not the individual also pairs neatly with modern firearm regulations. Going armed with intent, possession

25

of a firearm during a drug transaction, assault with a dangerous weapon all regulate the *conduct* of the individual *while possessing a firearm*, not the particular "subset" status of the individual.   And these modern analogues further fit well with similar founding-era historical regulations as described above, where the conduct was regulated, not the "bearer" of the "arm."

Indeed, *Bruen* genuinely indicated disdain for post Second Amendment ratification laws that attempted to thwart the right of certain subsets of "people to keep and bear arms." *Id.* at 2151 ("After the Civil War, of course, the exercise of this fundamental right by freed slaves was systematically thwarted. This Court has already recounted some of the Southern abuses violating blacks' right to keep and bear arms.") (citing *McDonald v. City of Chicago*, 561 U.S. 742, 771, 130 S.Ct. 3020 (2010) (noting the "systematic efforts" made to disarm blacks); *id.*, at 845–847, 130 S.Ct. 3020 (THOMAS, J., concurring in part and concurring in judgment); *see also* S. Exec. Doc. No. 43, 39th Cong., 1st Sess., 8 (1866) ("Pistols, old muskets, and shotguns were taken away from [freed slaves] as such weapons would be wrested from the hands of lunatics")).   Asserting a blanket disarmament of freed slaves because they were perceived as "lunatics," a status for which they could never rehabilitate, is analogous to disarming all felons for life, simply because the government labels them as felons.   And it should surprise no one that African

26

American males, like Sharkey, are disproportionately labeled as felons in the United States. *See* Shannon, Uggen, Schnittker, Thompson, Wakefield, and Massoglia, *The Growth, Scope, and Spatial Distribution of People With Felony Records in the United States, 1948–2010*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5996985 (last visited 5/7/2024) ("We estimate that 3 % of the total U.S. adult population and 15 % of the African American adult male population has been to prison; people with felony convictions account for 8 % of all adults and 33 % of the African American adult male population.").

### d. Sharkey's specific conduct in the instant case was protected by the Second Amendment.

As stated above, the Supreme Court has already determined that the individual right to possess firearms in and outside the home is protected by the plain text of the Second Amendment. Here, in Counts 1, 3, and 6, Sharkey possessed firearms. This was constitutionally protected conduct. Counts 2, 4, and 5 derived from Sharkey being defined as prohibited from possessing firearms. Since defining him as a prohibited person is unconstitutional as described herein, Counts 2, 4, and 5 were also unconstitutional. For all of these reasons, the district court should have dismissed Counts 1-6 of the superseding indictment. Understanding that Sharkey

27

was acquitted in Count 1 and 4 of the superseding indictment, he asks that this Court remand with instructions to dismiss Counts 2, 3, 5, and 6 and resentence Sharkey on Counts 7 and 8.

> ## II. The District Court violated Sharkey's Constitutional Rights when it relied on Acquitted Conduct to Dramatically Increase his Sentence.

**Standard of Review:** Sharkey raises constitutional challenges to the district court's use of acquitted conduct to dramatically increase his sentence, and this Court should review those challenges *de novo*. *United States v. Wade*, 435 F.3d 829, 831 (8th Cir. 2006).

**Merits:** The Supreme Court has recognized that "the use of acquitted conduct to increase a defendant's Guidelines range and sentence raises important questions that go to the fairness and perceived fairness of the criminal justice system." *McClinton*, 143 S. Ct. at 2401.

> Juries are democratic institutions called upon to represent the community as "a bulwark between the State and the accused," and their verdicts are the tools by which they do so. *Southern Union Co. v. United States*, 567 U.S. 343, 350, 132 S.Ct. 2344, 183 L.Ed.2d 318 (2012) (internal quotation marks omitted); *see also Blakely v. Washington*, 542 U.S. 296, 305–306, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ("Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary"). Consistent with this, juries were historically able to use acquittals in various ways to limit the State's authority to punish, an ability that the Founders prized. *See Jones v. United States*, 526 U.S.

28

227, 245–246, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). With an acquittal, the jury as representative of the community has been asked by the State to authorize punishment for an alleged crime and has refused to do so.

*Id.* at 2401-02.

Just as important, the use of acquitted conduct at sentencing is inconsistent with the Sixth Amendment right to a jury trial, the Fifth Amendment due process Clause, and the protection against double jeopardy. *See* Eang Ngov, *Judicial Nullification of Juries: Use of Acquitted Conduct at Sentencing*, 76 Tenn. L. Rev. 235, 258–69 (2009); *see also United States v. Carvajal*, 85 F.4th 602, 611 (1st Cir. 2023) (citing *e.g., Jones v. United States*, 574 U.S. 948, 948, 135 S.Ct. 8, 190 L.Ed.2d 279 (2014) (Scalia, J., joined by Thomas & Ginsberg, JJ., dissenting from denial of certiorari) (arguing that the imposition of "sentences that, but for a judge-found fact, would be reversed for substantive unreasonableness" had "gone on long enough"); *United States v. Magee*, 834 F.3d 30, 38 (1st Cir. 2016) (Torruella, J., concurring) ("[I]t is constitutionally suspect to drastically increase a defendant's sentence based on conduct that was neither proven beyond a reasonable doubt nor to which the defendant plead guilty."); *United States v. Bell*, 808 F.3d 926, 929 (D.C. Cir. 2015) (Millett, J., concurring in denial of rehearing en banc) ("[A]llowing a judge to dramatically increase a defendant's sentence based on jury-acquitted

29

conduct is at war with the fundamental purpose of the Sixth Amendment's jury-trial guarantee."); *State v. Cote*, 129 N.H. 358, 530 A.2d 775, 785 (1987) (explaining that criminal defendants are entitled to "full benefit" of the presumption of innocence, a benefit that "is denied when a sentencing court may have used charges that have resulted in acquittals to punish the defendant"); *McClinton*, 143 S. Ct. at 2403 (Sotomayor, J., respecting the denial of certiorari) ("The Sentencing Commission, which is responsible for the Sentencing Guidelines, has announced that it will resolve questions around acquitted conduct sentencing in the coming year. If the Commission does not act expeditiously or chooses not to act, however, this Court may need to take up the constitutional issues presented.").

On April 17, 2024, "[t]he bipartisan United States Sentencing Commission voted unanimously [] to prohibit conduct for which a person was acquitted in federal court from being used in calculating a sentence range under the federal guidelines." *See COMMISSION VOTES UNANIMOUSLY TO PASS PACKAGE OF REFORMS INCLUDING LIMIT ON USE OF ACQUITTED CONDUCT IN SENTENCING GUIDELINES,* https://www.ussc.gov/about/news/press-releases/april-17-2024 (last visited 5/6/2024). "Not guilty means not guilty," said Chair Reeves. "By enshrining this basic fact within the federal sentencing guidelines, the Commission is taking an

important step to protect the credibility of our courts and criminal justice system." *Id.*

As noted, Sharkey chose to go to trial and have a jury determine his fate. Count 1 was a felon in possession charge, but the Government spent the bulk of trial trying to prove that Sharkey was an attempted murderer under Count 1. Before trial and at sentencing, the district court knew that Sharkey had never been offered any plea deal that did not require him to plead guilty to Count 1 and admit that he was an attempted murderer. (R. Doc. 153, at p. 5-6); (Sent. Tr., p. 16, ll. 15-19). This meant that Sharkey not only had to accept the attempted murder cross-reference under the USSG, but he also had to expose himself to a 25-year sentence with a mandatory minimum 17.5 years in state custody under Iowa Code §§ 707.11 and 902.12.[8] Going to trial was constitutionally protected, was sound legal strategy, and the jury acquitted him of Count 1.

After the Government lost Count 1, it used sentencing as another bite at that same apple. It argued that Sharkey, "at a minimum," "possessed a firearm in connection with the state of Iowa felony crimes of attempted murder, willful injury, assault with intent to inflict serious injury, assault while using/displaying a weapon,

---

[8] Even at his federal sentencing, admitting "relevant conduct" in Count 1 would have exposed Sharkey to state prosecution. *Cf.* (Sent. Tr., p. 17, ll. 11-13).

31

and intimidation with a dangerous weapon." (R. Doc. 152, at p. 6). This assertion was based solely on acquitted conduct from Count 1. Taking it a step further, the Government provided the district court with a comparison of what the guideline range would be without the attempted murder cross-reference and what it would be with, i.e. 360 months to life imprisonment. (R. Doc. 152, at p. 15-16). And it asked the district court to sentence Sharkey to 360 months based on that acquitted conduct "to reflect the use of the attempted murder cross reference." (R. Doc. 152, at p. 16, p. 14-19); *cf.* USSG § 2K2.1(c)(1) (can only cross-reference on a count of conviction).

Sharkey countered and asked the district court to avoid the invitation to punish him for conduct for which a jury of his peers acquitted him. (R. Doc. 153, at p. 5); (Sent. Tr., p. 10, ll. 23-25; p. 28-30). He further argued that to do so violated his constitutional protections under the Sixth Amendment, Fifth Amendment, and against double jeopardy. (R. Doc. 153, at p. 5-6); (Sent. Tr., p. 22, ll. 4-7, p. 30, ll. 7-10). Sharkey asked for a total sentence of no more than the statutory maximum of 180 months for any one Count of conviction. (Sent. Tr., p. 29, l. 21-p. 30, l. 13).

At sentencing, the district court was aware that, if it accepted all enhancements advanced by the Government that did not implicate acquitted conduct, Sharkey's total adjusted offense level would have been 32. (Sent. Tr., p. 20, l. 22-p. 21, l. 1).

With a CHC of IV, Sharkey's sentencing range would have been 168-210 months. (Sent. Tr., p. 29, ll. 1-15). The district court, however, rejected Sharkey's resistance, considered the acquitted conduct as proven by a preponderance of the evidence, and held that the acquitted conduct "constituted not only attempted murder under Iowa law, but as well as Iowa felony offenses for willful injury, assault with intent to inflict serious injury, assault while using or displaying a weapon, and intimidation with a dangerous weapon." (Sent. Tr., p. 11, ll. 18-22); *cf. United States v. Watts*, 519 U.S. 148, 156, n.2, 117 S. Ct. 633, 638, 136 L. Ed. 2d 554 (1997) (If the acquitted conduct "would dramatically increase the sentence," a higher evidentiary standard, such as a "clear and convincing" standard may be necessary.). The district court even varied upward and sentenced Sharkey to 360 months, which was 42% above the top end of his guideline range without considering acquitted conduct. That is dramatic. It harshly punished Sharkey for exercising his constitutional rights and being vindicated. It was unconstitutional and should be reduced on appeal.[9]

---

[9] In *United States v. Booker,* 543 U.S. 220, 240, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court correctly characterized *United States v. Watts,* 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) as holding only that "the [Fifth Amendment's] Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines." But our court has interpreted *Watts's* narrow holding as applying to the use of acquitted conduct more broadly. *See, e.g., United States v. Whatley,* 133 F.3d 601, 606 (8th Cir.1998). It is clear to me that the myth of *Watts* has outgrown its actual holding. Stated plainly,

33

### III. The District Court's 360-Month Sentence was Procedurally and Substantively Unreasonable.

**Standard of Review:**    This Court reviews a district court's sentence, considering both the procedural soundness and substantive reasonableness of the sentence imposed. *United States v. Nickerson*, 322 Fed. Appx. 472, 474 (8th Cir. 2009).  It will first review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error when assessing the procedural reasonableness of the sentence imposed. *United States v. Burnette*, 518 F.3d 942, 945 (8th Cir. 2008).  If no procedural error occurred, then it will review the substantive reasonableness of the sentence for abuse of discretion. *Gall v. U.S.*, 552 U.S. 38, 128 S. Ct. 586, 597, 169 L. Ed. 2d 445 (2007).  In conducting this review, this Court is to "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.*  A district court abuses its discretion when it (1) "fails to consider a relevant factor that should have received significant weight"; (2) "gives significant weight to an improper or irrelevant factor"; or (3) "considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *U.S. v. Anderson*, 618 F.3d 873,

---

*Watts* does not immunize the use of acquitted conduct from a challenge under the Sixth Amendment or the Due Process Clause of the Fifth Amendment. <u>*United States v. Papakee*</u>, 573 F.3d 569, 577, n.3 (8th Cir. 2009) (Bright, J., dissenting).

34

883 (8th Cir. 2010) (quoting *United States v. Kane*, 552 F.3d 748, 752 (8th Cir. 2009)). In the context of reviewing a sentence for reasonableness, a proper or relevant factor is one listed under § 3553(a). *United States v. Haack*, 403 F.3d 997, 1002-03 (8th Cir.2005).

**Merits:** The government has the burden to prove the factual basis for an enhancement. *United States v. Mitchell*, 825 F.3d 422, 425 (8th Cir. 2016) (citing *United States v. Cochrane*, 608 F.3d 382, 383 (8th Cir. 2010)). Here, the Government rested on trial evidence to support the 4-level enhancement "in connection" under USSG § 2K2.1(b)(6)(B). (Sent. Tr., p. 10, ll. 12-20). However, the trial evidence was inconclusive as to whether Sharkey was the baby shower shooter on June 18, 2022, and he was rightfully acquitted by the jury of that accusation. First, the evidence at trial showed that the shooter was covered from head to toe and wore yellow shorts and a blue hoodie when firing upon the target of the shooting – J.S. (R. Doc. 140), (Government Exh. 100A-Q; 101A-H; 102A-H). The Government attempted to prove that this clothing was the same clothing Sharkey was later seen wearing at the gym and elsewhere, but the defense produced evidence that showed Sharkey's half-brother and roommate, who also had opposite gang ties to J.S., wearing the exact same yellow shorts and a blue top. (R. Doc. 140), (Government Exh. 202; 217; 218); *cf.* (R. Doc. 143), (Defense Exh. G-I and X-Y). Second, no

35

eyewitnesses testified that Sharkey was the shooter. Third, the cell phone tower evidence produced by the Government did not show Sharkey at the shooting's location at the time of the shooting. (R. Doc. 141), (Government Exh. 502). What the jury was left with was whether it should convict Sharkey because he owned clothing similar to the shooter. But, as the defense argued, anyone wanting to shoot J.S., would have been wearing blue, which was the opposing gang color from J.S., whose gang wore red. Given the number of opposing gang members to J.S., it was more likely that someone other than Sharkey shot J.S.

In overruling Sharkey's objection to applying § 2K2.1(b)(6)(B), the district court never explained what evidence it found proved Sharkey was the baby shower shooter that the jury must have missed in acquitting Sharkey. The district court simply concluded "that the Government's trial evidence that [Sharkey] [was] the baby shower shooter was … compelling and credible[]" and grounds to apply § 2K2.1(b)(6)(B). (Sent. Tr., p. 11, l. 6-p. 12, l. 6). This was procedurally unreasonable.

The district court also erred in applying the 2-level enhancement pursuant to USSG § 3B1.1(c) to Sharkey for being an organizer, leader, manager, or supervisor of the straw purchasing conspiracies. In determining whether a defendant qualifies for an enhancement pursuant to § 3B1.1, the district court may consider:

36

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*United States v. Frausto*, 636 F.3d 992, 996 (8th Cir. 2011) (citing *United States v. Adamson*, 608 F.3d 1049, 1056 (8th Cir.2010) (alteration in original) (quoting § 3B1.1 cmt. n. 4)).

The Final PSR claimed that Sharkey deserved the 2-level enhancement for his role in the straw purchasing of firearms under USSG § 3B1.1(c) because he "solicited [M.M.][10] to purchase firearms for him." (PSR, p. 11). This was a distortion of reality. M.M. was in a relationship with a known gang member and felon, Dominic Lacava.[11] She had already purchased a .22 caliber revolver on 3/18/2022 from BassPro for Lacava prior to ever meeting Mr. Sharkey. (Defense Exh. N-O); (*Compare* Sthrn. Dist. of IA 4:23-CR-082 (R. Doc. 2) *with* Sthrn. Dist. of IA 4:23-CR-020 (R. Doc. 2)). Additional evidence at trial showed that M.M. was the one who initiated contact with Sharkey to buy marijuana from Sharkey's father and to

---

[10] M.M. was a co-conspirator but also a witness for the Government against Sharkey. She was charged separately in 4:23-CR-082.

[11] Lacava was also a co-conspirator, but not a witness, and charged separately in 4:23-CR-020.

Appellate Case: 24-1294     Page: 46     Date Filed: 05/08/2024 Entry ID: 5391815

put money on Lacava's jail books. (R. Doc. 140), (Government Exh. 226, at p. 2).

It was not Sharkey soliciting M.M.  Applying the 2-level enhancement pursuant to

USSG § 3B1.1 was therefore procedurally unreasonable.

The district court also abused its discretion and committed error when it

improperly considered unproven, acquitted conduct to apply the 4-level "in

connection with" enhancement under USSG § 2K2.1(b)(6)(B). (Sent. Tr., p. p. 11,

ll. 18-22).  As stated above, it appears that the USSC realizes the constitutional error

in using acquitted conduct to calculate a defendant's sentencing range.  If Congress

does not act to disapprove the change, it will go into effect on November 1, 2024.

Whether it will be retroactively applied has not been decided, but it should be since

it implicates constitutional rights.

The district court further abused its discretion and committed error when it

considered acquitted conduct under 3553(a) to vary upward to 360 months.  At

sentencing, the Government requested an upward departure to 360 months based on

the acquitted conduct that has been discussed herein.  The district court declined and

stated that it would consider the Government's request under 3553(a). (Sent. Tr., p.

22, ll. 12-22).  The district court's subsequent 3553(a) analysis gave significant

weight to the acquitted conduct that Sharkey was the baby shower shooter by a

preponderance of the evidence.  The fact that the district court stated that it would

38

have sentenced Sharkey to 360 months even if it did not consider acquitted conduct is simply not supported by the record. (Sent. Tr., p. 35, l. 13-p. 36, l. 1). The Government asked the district court to sentence Sharkey to 360 months as if it had won a conviction on Count 1 and the cross-reference to attempted murder applied. There was simply no other reason for the district court to vary upward 42% above the top end of Sharkey's guideline range in the absence of considering acquitted conduct. As discussed throughout this brief, the use of acquitted conduct to sentence Sharkey was a violation of his 5th and 6th Amendment rights and a violation of double jeopardy protection. This was substantively unreasonable and an abuse of discretion.

## CONCLUSION

For the reasons stated in Section I of the Argument, this Court should reverse the district court's denial of Sharkey's motion to dismiss the superseding indictment and dismiss Counts of conviction 2, 3, 5, and 6. For the reasons stated in Sections II and III of the Argument, Sharkey's sentence should be vacated, and the case remanded for resentencing on Counts of conviction 7 and 8 with instructions that the district court should not consider acquitted conduct nor apply enhancements for "in connection" or "role adjustment."

Appellate Case: 24-1294 Page: 48 Date Filed: 05/08/2024 Entry ID: 5391815

**CAUSEY & YE LAW, P.L.L.C.**

_____/s/Jonathan M. Causey

Jonathan M. Causey AT0012248
2213 Grand Avenue
Des Moines, IA 50312
(p) 515-381-0168
(f)  515-214-1434
(e) Jon@CauseyYeLawGroup.com
**CJA ATTORNEY FOR DEFENDANT**

Filed CM/ECF

**NOTICE OF ELECTRONIC FILING**

Notice of Electronic Filing is sent through the CM/ECF electronic document management system to all registered filers for the above-mentioned matter.  A review of the filers in this matter indicates all necessary parties have been or will be served.  Any unregistered filer will be served with a written copy and so noted in a Certificate of Service.

By:  /s/ Jonathan M. Causey _____
      Jonathan M. Causey

Date: May 8, 2024.

40

## CERTIFICATE OF FILING AND SERVICE

I certify that, on May 8, 2024, I electronically filed the foregoing brief and addendum with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users were served by the CM/ECF system. The brief and addendum were scanned for viruses using Microsoft Defender. I also certify on May 8, 2024, after receipt of notice that the brief and addendum were filed, I served a paper copy of this brief on defendant-appellant by mailing him a copy at USP BIG SANDY, U.S. PENITENTIARY, P.O. BOX 2068, INEZ, KY 41224. I further certify that I will transmit 10 paper copies of the brief and addendum to the Clerk of Court via Federal Express and 1 paper copy to the appellee via regular mail as noted below once it is accepted for electronic filing.

**CAUSEY & YE LAW, P.L.L.C.**

_____/s/Jonathan M. Causey
Jonathan M. Causey AT0012248
2213 Grand Avenue
Des Moines, IA 50312
(p) 515-381-0168
(f) 515-214-1434
(e) Jon@CauseyYeLawGroup.com
**CJA ATTORNEY FOR DEFENDANT**

Copy to:
Kristin Herrera, AUSA
Southern District of Iowa
110 East Court Avenue, Suite 286
Des Moines, IA 50309

41

## Fed. R. App. P. 32(a)(7) AND 8th CIR. RULE 28A(c) CERTIFICATION

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7).  The brief uses a proportional space, 14-point Times New Roman font.  Based on a line count under Microsoft Word, the brief contains 811 lines and 8,467 words, excluding the table of contents, table of authorities, any addendum, and certificates of counsel.

**CAUSEY & YE LAW, P.L.L.C.**

_____/s/Jonathan M. Causey

Jonathan M. Causey AT0012248
2213 Grand Avenue
Des Moines, IA 50312
(p) 515-381-0168
(f)  515-214-1434
(e) Jon@CauseyYeLawGroup.com
**CJA ATTORNEY FOR DEFENDANT**

42